IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **PATRICK TATE**, Administrator of the Estate of **OSCAR GALLEGOS CORONA**, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> **WING ENTERPRISES, INC., d/b/a LITTLE GIANT LADDERS**, a corporation; **WING PRODUCT DEVELOPMENT, L.C.**, A corporation; Et. Al., <br><br> Defendants. | 4:17-CV-01612-KOB |

## PLAINTIFF'S MOTION TO REMAND

**COMES NOW**, the Plaintiff, by and through the undersigned counsel, and moves to remand this personal injury and wrongful death action removed by Defendants Wing Enterprises, Inc., d/b/a Little Giant Ladder Systems and Wing Product Development, L.C., (collectively hereinafter "Wing"). As grounds hereof, Plaintiff provides the following:

### I. INTRODUCTION

The underlying products liability action was initially filed on March 28, 2017, claiming damages when Eloy Corona was "severely injured when the LITTLE GIANT

LADDER collapsed causing him to fall."[1] Specifically, the initial Complaint filed in this action stated that as a result of Wing's tortious conduct, "ELOY GALLEGOS CORONA was caused to suffered serious permanent injuries, including, but not limited to traumatic brain injury."[2]

Although no specific amount of damages were included in the Complaint, Plaintiff sought recovery of damages for permanent injuries, past and future medical expenses, past lost wages, future lost wages and loss of earning capacity, mental anguish and emotional distress, and punitive damages.[3]

Unfortunately, Mr. Corona passed away on April 3, 2017—six days after the filing of his personal injury lawsuit. On July 5, 2017, Plaintiff filed his First Amended Complaint[4], substituting Patrick Tate, as the administrator of the estate of Eloy Corona as the real party in interest in the pending personal injury lawsuit and adding a count against Wing for wrongful death. Although no specific amount of damages were claimed in the First Amended Complaint, the previous damages from the personal injury suit were re-alleged and Plaintiff sought punitive damages related to the wrongful death of Eloy Corona.

---

[1] *See* Exhibit A at ¶ 4.

[2] *See* Exhibit A at ¶ 10(a).

[3] *See* Exhibit A at ¶ 10(a-g); and ad damnum clause following ¶ 10.

[4] Exhibit B

2

On September 19, 2017—five months and twenty-two days after the initial Complaint was filed—Wing filed a notice of removal to this Court. There is no dispute that the only named parties in both the initial Complaint and the First Amended Complaint were completely diverse from Plaintiff in both instances. Instead, Wing bashfully attempts to argue that it had no basis to suspect that the amount in controversy of either Plaintiff's initial Complaint and/or First Amended Complaint exceeded $75,000 until after receipt of a hospital lien.

Wing argues, out of despair of its own procedural mistake, that the amount in controversy of the underlying claims for personal injuries stemming from "traumatic brain injury" and, subsequently, wrongful death could not be ascertained until Wing received a hospital lien for medical expenses exceeding the $75,000 threshold for federal jurisdiction. Such an argument is preposterous and flies in the face of black-letter law from both the Eleventh Circuit and the Northern District of Alabama. Wing is forced to make such a meritless argument because it failed to timely remove this action following the receipt of Plaintiff's Complaint or Plaintiff's First Amended Complaint.

As shown below, Wing failed to timely file its notice of removal and, therefore, this Court is required to remand this action to the Circuit Court of Etowah County.

## II. ARGUMENT

Wing's removal is based on diversity jurisdiction under 28 U.S.C. § 1441(b). As this Court is aware, 28 U.S.C. § 1446 provides the mandatory procedural requirements for removal of an action from state court to federal court. §1446(b)(1) specifically provides the following mandatory timing requirements as to removal:

> The notice of removal of a civil action or proceeding **shall** be filed within **30 days after the receipt by the defendant**, through service or otherwise, of **a copy of the initial pleading setting forth the claim for relief** upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

There is no question that both the Complaint and First Amended Complaint facially demonstrated that all parties were completely diverse. Therefore, the only removal analysis Wing was faced with at the time it received the initial Complaint and later the First Amended Complaint was whether "good sense and experience" would allow it to plausibly allege that the amount in controversy exceeded $75,000. As shown below, the Complaint and First Amended Complaint abundantly demonstrated that the amount in controversy was sufficient for removal **at that time**. Therefore, per §1446(b)(1), Wing was required to remove the Complaint by May 3, 2017 or the First Amended Complaint by August 5, 2017, both of which Wing failed to do.

### i. Wing's removal is untimely and, thus, procedurally defective because this case was removable upon Wing's receipt of both the Complaint and the First Amended Complaint.

The untimeliness of Wing's removal must be first viewed in the context of when the action first became removable. The central question in this case is whether it was facially apparent from the initial Complaint or from the First Amended Complaint that the amount in controversy exceeded $75,000. The resounding answer is "yes," and necessitated that Wing remove the action 30 days after receipt of either the Complaint or First Amended Complaint.

In making the amount of controversy determination, "Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010)(internal citations and quotation marks omitted). "[A] district court need not suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount." *Id.* (internal citations and quotations omitted). *See also Smith v. State Farm Fire and Cas. Co.*, 868 F. Supp. 2d 1333, 1335 (N.D. Ala. 2012) (Acker, J.)(relying upon "good sense and experience" in determining that amount in controversy exceeded $75,000 exclusive of interest and costs). Furthermore, a notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing

the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

In addition to utilizing "good sense and experience," the Northern District of Alabama has also considered a Plaintiff's failure to specifically seek less than $75,000 as additional support that the amount of controversy requirement is apparent from the face of a complaint. Specifically, Judge Acker concluded in *Smith v. State Farm Fire and Cas. Co.*, that if a plaintiff "want[s] to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds," that plaintiff "will find herself in a federal court" unless she "expressly disclaim[s] any entitlement to more than $74,999.99 and categorically state[s] that plaintiff will never accept more." 868 F. Supp. 2d at 1335.

Judge Bowdre has similarly opined that "[w]ithout an affidavit from [plaintiff] stating that he will not claim any more than $74,999.99 from [defendant] in damages, this court has jurisdiction over the case and DENIES [plaintiff's] motion to remand." *Seckel v. Travelers Home and Marine Ins. Co.*, No. 4:12-CV-4163-KOB, 2013 WL 360421, at *2 (N.D. Ala. Jan 29, 2013).

Furthermore, "[p]unitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases." *Mitchell v. Golden Living Nursing Home*, No. 2:16-CV-124-WHA, 2016 WL 340629, at *3 (M.D. Ala. June 15,

2016)(quoting *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010). Punitive damages, alone, can elevate the amount in controversy significantly. *See, e.g., Geodesic Consulting LLC v. BBVA USA Bancshares, Inc.,* 2015 WL 4985474, at *2 (N.D. Ala. 2015)(stating that the court did not need to "overuse its common sense to conclude" that the amount in controversy exceeded $75,000 where the plaintiff sought $35,840 in contract damages and asserted a fraud claim seeking punitive damages); *Blackwell v. Great American Financial Resources, Inc.* 620 F. Supp. 2d 1289, 1291 (N.D. Ala. 2009)(finding that defendant satisfied its burden of proving the amount in controversy where the plaintiff sought compensatory damages of $23,172.28 and punitive damages).

### a. The Amount in Controversy Was Facially Apparent Upon Wing's Receipt of Service of the initial Complaint.

Wing was served with the initial Complaint on April 3, 2017.[5] At that time, it knew that Plaintiff made claims stemming from a "traumatic brain injury" that rendered Eloy Corona "an incapacitated adult."[6] Wing also knew upon receipt of the Complaint on April 3, 2017, that the Plaintiff did <u>not</u> limit his claimed damages to less than $75,000.00 and, instead, claimed compensatory damages for permanent injuries, past and future medical expenses, past lost wages, future lost wages and loss of earning

---

[5] *See* Exhibit C

[6] Exhibit A at ¶ 1.

capacity, mental anguish and emotional distress, and punitive damages.[7] As to the punitive damages, Plaintiff's Complaint sought "punitive damages in an amount which will adequately reflect the enormity of the Defendants' wrongful acts and which will effectively prevent other similar wrongful acts."[8]

Using Judge Acker's "good sense and experience" test, Wing undeniably knew that the amount in controversy requirement was facially apparent from the Complaint on April 3, 2017. Wing could certainly make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the Complaint that it was facially apparent that the case was removable on April 3, 2017. *See Roe v. Michelin N. Am., Inc.*, 613 F. 3d 1058, 1061-62 (11th Cir. 2010).

As noted above, Judge Acker's "good sense and experience" test has rendered complaints that respectively claimed compensatory damages of $35,840 (*Geodesic*) and $23,172.28 (*Blackwell*) coupled with punitive damages sufficient to hold that those complaints facially demonstrated sufficient amounts in controversy to trigger removal. Here, Plaintiff's claims for punitive damages in addition to various compensatory damages arising from permanent "traumatic brain injury,"[9] such as claims for "large sums of money in the nature of doctor, hospital, drug, and other medical expenses,"[10]

---

[7] *See* Exhibit A at ¶ 10.

[8] Exhibit A at ad damnum clause following ¶¶ 10, 12, 14.
[9] Exhibit A at ¶ 10(a)

[10] Exhibit A at ¶ 10(c)

certainly require a similar finding. A finding that was facially apparent from the Complaint upon Wing's receipt of service on April 3, 2017.

Therefore, Wing was required to remove Plaintiff's Complaint on May 3, 2017—thirty days from the receipt of the initial Complaint. As a result, Wing's failure to file its notice of removal until September 19, 2017, is procedurally defective and requires remand of this action back to the Circuit Court of Etowah County, Alabama.

### b. The Amount in Controversy Was Facially Apparent Upon Receipt of Service of the First Amended Complaint.

On May 3, 2017, Wing filed a Suggestion of Death in the Circuit Court of Etowah County taking note of Eloy Corona's passing on April 3, 2017. Wing was served with the First Amended Complaint on July 5, 2017.[11] At this time, it was apparent from the face of the First Amended Complaint that Plaintiff sought both the previously-mentioned personal injury damages stemming from Eloy Corona's "traumatic brain injury" and punitive damages for the newly-added wrongful death claim.

Identical to the initial Complaint, the First Amended Complaint sought punitive damages "in an amount which will adequately reflect the enormity of the Defendants' wrongful acts and which will effectively prevent other similar wrongful acts." "Good sense and experience" dictate that even if Wing reasonably suspected that the initial

---

[11] As both Wing defendants had been served at the time of Plaintiff's filing of the First Amended Complaint, Wing received service of the First Amended Complaint electronically upon the date of filing.

9

personal injury damages claimed in the initial Complaint did not meet the requisite $75,000 at the time it received the initial Complaint, the First Amended Complaint's addition of a wrongful death count to those personal injury claims erased any such doubt. Therefore, it was facially apparent upon receipt of the First Amended Complaint that the amount in controversy exceeded $75,000. At a minimum, Wing could make a reasonable deduction, inference, or extrapolation from the First Amended Complaint that such amount in controversy was at least *plausible*.[12]

Therefore, Eleventh Circuit law mandates that, **at the latest**, Wing's notice of removal was due to be filed August 5, 2017—thirty days after receipt of the First Amended Complaint on July 5, 2017. Wing's untimely removal comes 45 days after this mandatory deadline.

### ii. Wing's claim that removal is timely under 28 U.S.C § 1446(b)(3) is without merit.

Despite the fact that a defendant normally has no obligation to justify the timeliness of its removal in its notice, Wing goes to great lengths to argue that its notice of removal was timely filed because it allegedly could not ascertain that the amount in controversy exceeded $75,000 until Defendants' counsel received a hospital lien of $597,637.10 on August 23, 2017. *See Defendant's Notice of Removal* at ¶¶ 5-10.

---

[12] *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 554 (2014)(holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

Wing does so because it knows it blew the mandatory removal deadlines laid out in §1446(b)(1). Therefore, it prays that this Court will excuse its undeniable mistake and impermissibly allow removal under §1446(b)(3). That exception to §1446(b)(1)'s thirty-day mandatory removal deadline after receipt of the Complaint or First Amended Complaint only applies if it is not ascertainable that the case is removable upon receipt of the Complaint or First Amended Complaint. As explained in detail above, both the Complaint and First Amended Complaint were immediately removable upon receipt by Wing and, therefore, the exception under §1446(b)(3) is inapplicable to this case.

Wing's reference to the hospital lien of $597,637.10 only reaffirms what was pleaded in both the Complaint and the First Amended Complaint—that Plaintiff sought recovery of "large sums of money in the nature of doctor, hospital, drug and other medical expenses in and about an effort to heal and cure" his "serious permanent injuries, including but not limited to traumatic brain injury." [13]

Wing's insistence upon § 1446(b)(3)'s application to this case is misplaced and only highlights the procedural defect of its untimely removal.

### III. CONCLUSION

---

[13] Exhibit A at ¶ 10 (a)-(c).

11

Consistent with the mandates of 28 U.S.C. § 1446(b)(1) and the black letter law of both the Eleventh Circuit and the Northern District of Alabama, this case is due to be remanded to the Circuit Court of Etowah County, Alabama.

/s/ S. Drew Barnett

**S. DREW BARNETT (ASB9240Y13H)**
Attorney for Plaintiff

OF COUNSEL:
**BELT & BRUNER, P.C.**
880 Montclair Road, Suite 300
Birmingham, AL 35213
Telephone: (205) 933-1500
Facsimile: (205) 933-5500
drewb@beltlawfirm.com

## CERTIFICATE OF SERVICE

I do hereby certify that on __26th__ day of __September__, 2017, I electronically filed the foregoing with the Clerk of the Court, using the Pacer/ECF system which will send notification of such filing to the following registered persons and that those persons not registered with the Pacer/ECF system were served by placing a copy of same in the United States Mail, First Class Postage Prepaid, to:

**WING ENTERPRISES, INC. d/b/a**
**LITTLE GIANT LADDERS**
**WING PRODUCT DEVELOPMENT, L.C.**
Connie Ray Stockham, Esq.
STOCKHAM, COOPER & POTTS, P.C.

12

505 North Twentieth Street
Suite 1111
Birmingham, Alabama 35203
E.:     cstockham@scplaw.net

F. Michael Haney, Esq.
INZER, HANEY, McWHORTER & HANEY, LLC
P. O. Drawer 287
Gadsden, AL 35902-0287
E.:     mikehaney@bellsouth.net

_____
OF COUNSEL